1
2
3
4                          UNITED STATES DISTRICT COURT
5                               DISTRICT OF NEVADA
6                                      * * *

7   RAJIT ARORA,                              Case No. 2:15-cv-00751-RFB-PAL
8                       Plaintiff,
                                              **ORDER**
9          v.
10  ELDORADO RESORTS CORPORATION,
    *et al.*,
11
                        Defendants.
12

13

14  **I.      INTRODUCTION**

15         This case is before the Court on a Motion to Dismiss filed by Defendants Eldorado

16  Resorts Corporation ("Eldorado") and Michael Marrs, Bruce Polansky, Kristen Beck, Dominic

17  Taleghani, and James Grimes, all of whom are directors, project managers, or vice presidents at

18  Eldorado. ECF No. 16. In their motion, Defendants seek dismissal of Plaintiff's First Amended

19  Complaint.[1] The Court has previously orally ruled on this Motion.  This written order elaborates

20  the Court's reasoning for granting in part and denying in part the Motion.

21

22  **II.     BACKGROUND**

23         **A.  Alleged Facts**

24         Plaintiff alleges the following facts in his Amended Complaint. During the times relevant

25  to this case, Plaintiff was an employee of Eldorado. Plaintiff is a 37-year old male of Indian

26  ───────────────────

27         [1] Defendants also filed Motions to Dismiss Plaintiff's original Complaint. ECF Nos. 10,
    15. However, Plaintiff filed his Amended Complaint within 21 days of the filing of that motion,
28  which is permitted one time as a matter of course. Fed. R. Civ. P. 15(a)(1)(B). The Amended
    Complaint is therefore the operative complaint in this action, and Defendants' first Motion to
    Dismiss is denied as moot.

descent born in 1997. He is Hindu. Plaintiff worked at Eldorado from May 2010 until June 26, 2014. Plaintiff worked as a Front Line Sales Agent, an assistant Project Director, a Project Director, and a Sales Director. During the majority of his employment with Defendant, Plaintiff earned a salary of $455 per week and a sales commission at a percentage of 4.5%.

Plaintiff alleges he was constructively discharged. Plaintiff alleges he suffered from harassment based on his race, color, religion, and national origin.  He received a text message from his supervisor indicating he was formally terminated on July 20, 2014.

Plaintiff alleges he suffered from harassment on a daily basis. His supervisors' conduct included jokes about his dialect, how he would not eat cow meat, and references to him as a "dot." Defendant sent Plaintiff to tables with people of Indian backgrounds to close deals, and asked him to pick and choose from Indians who walked through the door. He was prevented from closing sales from customers of Filipino descent, Vietnamese descent, and others, and was and was intentionally steered away from customers who did not match his race, color, religion, and or national origin.

Plaintiff alleges that Defendant repeatedly retaliated against him for reporting the existence of a hostile work environment at the Las Vegas Eldorado facility. He experienced excessive stress and verbal abuse in his work environment and was forced to stay for extended periods after hours by senior management including but not limited to Michael Marrs.

Plaintiff was also instructed by senior management at Eldorado to target FMLA employees for "write ups" for poor performance so that Eldorado would have cause to fire these employees. Plaintiff was told to obtain three write ups as soon as possible on FMLA employees, and alleges that this was part of a practice by Eldorado in which middle managers and human resources officers were ordered to place employees on administrative leave for long enough periods of time that they would not qualify for FMLA leave the following year. When Plaintiff refused to comply with senior management's orders, his positions, income, and commissions were changed in ways that appeared to be promotions, but operated as demotions because they negatively impacted his income. Plaintiff also alleges that he endured verbal abuse in his work environment and was threatened with loss of his job and physical harm if he did not like it. After

reporting these comments, Plaintiff's positions, commissions, and sales teams were changed to negatively impact his income.

Throughout his employment at Eldorado, Plaintiff witnessed discrimination by supervisors based on race, color, religion, and national origin. Eldorado has admitted that the random matching system, which pairs sales representatives with customers, has a manual override that is frequently utilized to match sales representative with customers of corresponding races. While Eldorado claims that this was to overcome language barriers, plaintiff alleges this is mere pretext. Eldorado regularly forced race-based matches. Eldorado ordered its sales representatives to sit in the lobby and target customers based on similar race, color, religion, and/or national origin.

In addition, Plaintiff makes several allegations against Eldorado with respect to his pay. Plaintiff alleges that Eldorado changed his pay rate and commission percentage several times without any notice or opportunity for Plaintiff to review the changes, and that there were no set criteria to determine when his pay rate would change or how it would change. Further, Plaintiff alleges that during his employment with Eldorado, he was not provided with rest or meal breaks, was not paid overtime despite consistently working over 40 hours per week, and was charged commission reversals by Eldorado without any explanation for sales made months or years earlier. Finally, Plaintiff alleges that Eldorado engaged in "backdoor" sales by offering customers a better deal, waiting for the customer to accept, canceling Plaintiff's sales in order to sell the property directly to the customer, and cutting Plaintiff's commissions on the sales.

In his Amended Complaint, Plaintiff asserts 11 causes of action: 1) race, color, religion, and national origin discrimination under Title VII and N.R.S. 613.330; 2) breach of contract; 3) retaliation under the FMLA, Title VII, and N.R.S. 613.330; 4) breach of the implied covenant of good faith and fair dealing; 5) tortious discharge; 6) failure to pay overtime under the Fair Labor Standards Act (FLSA) and N.R.S. 608.018; 7) failure to pay each hour worked under N.R.S. 608.016; 8) failure to pay wages for periods for meal and rest under N.R.S. 608.019; 9) unlawful taking of wages under N.R.S. 608.100; 10) willful failure/refusal to pay wages under N.R.S. 608.190; and 11) waiting time penalties under N.R.S. 608.040.

**B.  Procedural History**

Plaintiff filed his original Complaint on April 23, 2015. ECF No. 1. Defendants filed Motions to Dismiss on June 23, 2015 and July 10, 2015. ECF Nos. 10, 15. These Motions were denied on March 30, 2016. ECF No. 40.

On July 10, 2015, Plaintiff filed an Amended Complaint, which is now the operative complaint in this action. ECF No. 16; see note 1, supra. Defendants filed a second Motion to Dismiss on July 27, 2015. ECF No. 20. Plaintiff voluntarily dismissed Defendants Grimes and Polansky from this action on December 18, 2015. ECF No. 32.

The Court held a hearing on March 30, 2016 in which it granted in part and denied in part Defendants' second Motion to Dismiss. ECF No. 40. The Court held a status conference on May 31, 2016. ECF No. 49.


**III.    LEGAL STANDARD**

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).


**IV.    ANALYSIS**

After reviewing the parties' briefs, the Court concludes that Defendants' Motion to Dismiss must be granted in part and denied in part. Defendants raise a variety of arguments in support of their motion. The Court considers each argument below.

1

2

3       **A. Plaintiff's Title VII Discrimination Claims (Count 1)**

4       Next, Defendants argue that Plaintiff's allegations do not state a claim for race, color,

5 religion, or national origin discrimination. The Court disagrees and finds that Arora has stated a

6 claim under Title VII for discrimination based on race, color, religion, and national origin under

7 a disparate treatment theory.

8       To establish a *prima facie* case for discrimination under Title VII, a plaintiff must

9 demonstrate that: (1) he belongs to a protected class, (2) he was qualified for his job, (3) he

10 suffered an adverse employment action, and (4) similarly situated individuals outside the

11 protected class were treated more favorably, or other circumstances surrounding the adverse

12 employment action lead to an inference of discrimination. <u>Fonseca v. Sysco Food Servs. of Ariz.,

13 Inc.</u>, 374 F.3d 840, 847 (9th Cir. 2004). "Adverse employment action" is defined broadly, and

14 includes "where an employer's action negatively affects its employee's compensation." <u>Id.</u> at

15 847.

16       Arora alleges that through Eldorado's practice of "matching" salespeople to customers of

17 similar races, religions, and national origins, he was denied sales opportunities to customers who

18 were not Indian and/or Hindu and was asked to pick and choose from Indian customers who

19 walked through the door. Arora also alleges that these practices negatively affected his

20 compensation.  Although Defendants argue that Arora has not pleaded enough specific facts,

21 such as the positions for which he was passed over for promotions, such specific allegations are

22 not necessary. The Court therefore finds that Arora has established a prima facie case of

23 discrimination under a theory of disparate treatment.

24       In Count 1, Plaintiff also appears to be asserting a discrimination claim based on hostile

25 work environment. To state a hostile work environment claim, a Plaintiff must allege that (1) the

26 defendants subjected him to verbal or physical conduct based on a protected characteristic; (2)

27 the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

28 conditions of his employment and create an abusive working environment. <u>Surrell v. Cal. Water</u>

Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008). "The working environment must both subjectively and objectively be perceived as abusive." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (internal quotation marks omitted). Whether an environment was hostile or abusive is determined by looking at the totality of the circumstances; "[t]hese may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "No one single factor is required." Id.

The Court also finds that Arora has stated a Title VII claim under a hostile work environment theory. Arora, who is of Indian descent, alleges that he was subjected to harassment by his supervisors on a daily basis while employed at Eldorado.  This harassment included jokes about his dialect, jokes about how he would not eat cow meat, and him being called a "dot" by his supervisors. Arora also alleges that Eldorado management condoned and failed to correct this conduct. The Court finds that these allegations are sufficient at the pleading stage to state a claim for hostile work environment based upon Plaintiff's race, color, religion, and national origin.

Therefore the Court denies Defendants' Motion as to Plaintiff's Discrimination Claim.


### B.  Breach of Contract (Count 2)

#### 1.  Applicable Law

In Nevada, breach of contract is "a material failure of performance of a duty arising under or imposed by agreement."  Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987).  A breach of contract claim under Nevada law requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.  Richardson v. Jones, 1 Nev. 405, 409 (1865); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

#### 2.  Application

Defendants argue for dismissal of Plaintiff's breach of contract claim for failure to allege sufficient facts to state a claim. Plaintiff responds that his allegations that Defendants

intentionally stole money from him through commission reversals and backdoored sales are sufficient to state a claim for breach of contract. The Court finds that Plaintiff has adequately pleaded facts establishing his breach of contract claim.

First, Plaintiff alleges that a valid contract of employment existed between him and Defendants.  Plaintiff states that these contracts required him to work to sell timeshares in exchange for a base wage, commissions, and benefits. Although Plaintiff has not attached copies of the operative contract, he is not required to at this stage, particularly since he states that this information is in the possession of Defendants. Second, Plaintiff has alleged that Defendants breached their employment contracts by engaging in intentional acts to steal wages from Plaintiff. These alleged acts include reversing Plaintiff's commissions for sales made months and years earlier, "back-dooring" sales by negotiating with customers with whom Plaintiff had already finalized sales, and failing to pay Plaintiff overtime wages and wages for each hour worked and by depriving him of lunch and rest breaks.  In addition, Plaintiff also alleges that Defendants breached his employment contracts by demoting and constructively discharging him for refusing to participate in Defendants' practice of issuing write-ups to FMLA-eligible employees. Finally, Plaintiff has alleged that he was damaged in the form of lost wages and benefits. Therefore, Plaintiff's claim may proceed.

### C.  Plaintiff's Retaliation Claims (Count 3)

#### 1.  Applicable Law

Both Title VII and the FMLA prohibit discrimination against employees because they have opposed any employment practice prohibited under those statutes or because they have made a charge, testified, or participated in an investigation under those statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 2615(a)(2), (b). A prima facie case for retaliation under Title VII requires the plaintiff to show that: (1) she engaged in a protected activity,  (2) she suffered an adverse employment action, and (3) a causal link exists between the protected activity and adverse action. Manatt v. Bank of America, N.A., 339 F.3d 792, 800 (9th Cir. 2003). But-for causation is required to satisfy the third prong. Univ. of Texas Southwestern Med. Ctr. v. Nassar,

1    133 S.Ct. 2517, 2533 (2013).

2         "Protected activities" under Title VII include opposing allegedly discriminatory acts by

3    one's employer. Id.; 42 U.S.C. 2000e-3(a). They also include making informal complaints to

4    one's supervisor. Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).   "When an

5    employee protests the actions of a supervisor such opposition is a protected activity." Trent v.

6    Valley Elec. Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994). Further, if an employee communicates

7    to his employer a reasonable belief the employer has engaged in a form of employment

8    discrimination, that communication constitutes opposition to the activity. Crawford v. Metro.

9    Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009).

10        The Ninth Circuit defines "adverse employment action" as "any adverse treatment that is

11   based on a retaliatory motive and is reasonably likely to deter the charging party or others from

12   engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000).

13        The Ninth Circuit has not reached the issue of whether this burden-shifting framework

14   also applies to retaliation claims under the FMLA, although it has observed that some version of

15   this framework is applied in at least three other circuits. See Sanders v. City of Newport, 657

16   F.3d 772, 777 (9th Cir. 2011) (citing cases from the Sixth, Tenth, and First Circuits).

17                      *2. Application*

18        The Court finds that Arora has stated a claim for retaliation under the FMLA, but not

19   Title VII. In his Amended Complaint, Arora alleges that he reported Defendants' alleged

20   discrimination against employees based on their FMLA status to the Las Vegas Eldorado facility.

21   Arora also alleges that he refused to participate in this alleged discrimination. He alleges that as a

22   result of his opposition, Eldorado retaliated against him by making changes to his employment

23   that negatively impacted his income.

24        However, Arora does not allege that he opposed or reported Defendants' alleged

25   discriminatory acts on the basis of race, color, sex, religion, or national origin. Therefore, he has

26   not alleged sufficient facts to state a claim for Title VII retaliation, and this claim is dismissed

27   with leave to amend.

28

**D. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 4)**

### 1. *Applicable Law*

A contractual claim for breach of the implied covenant of good faith and fair dealing exists where "one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied[.]" Hilton Hotels Corp. v. Butch Lewis Productions, Inc., 808 P.2d 919, 923 (Nev. 1991). Additionally, the defendant may also be tortiously liable under this claim under "limited circumstances" where the employer-employee relationship "approximates the kind of special reliance, trust and dependency that is present in insurance cases" and the employer betrays that relationship in bad faith. D'Angelo v. Gardner, 819 P.2d 206, 215 (Nev. 1991). This additional tort liability is allowed only in cases where "ordinary contract damages do not adequately compensate the victim because they do not require the party in the superior or entrusted position . . . to account adequately for grievous and perfidious misconduct, and contract damages do not make the aggrieved, weaker, 'trusting' party 'whole.'" K Mart Corp. v. Ponsock, 732 P.2d 1364, 1371 (Nev. 1987), abrogated on other grounds by Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990).

### 2. *Application*

The Court finds that Plaintiff has stated a claim for contractual liability for breach of the implied covenant of good faith and fair dealing. Plaintiff has alleged that Defendants performed under his employment contract in a manner unfaithful to its purpose by charging commission reversals against Plaintiff's earnings, "back-dooring" numerous sales by Plaintiff negotiating a better deal with the customer and cutting Plaintiff's commissions.

However, Plaintiff has not stated a claim for tort liability for the breach of the implied covenant of good faith and fair dealing. Plaintiff has not alleged a relationship of "special reliance" like the one present in insurance cases. In determining whether such a special relationship exists, important factors include the promise of permanent employment, the length of employment, and termination involving deception, betrayal, or perfidy. Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 336 (9th Cir. 1995) (citing D'Angelo, 819 P.2d at 215). In

- 9 -

Plaintiff's Amended Complaint, Plaintiff has not alleged facts that would support a finding that any of the D'Angelo factors exists here. Therefore, to the extent Plaintiff asserts claims for tort liability for breach of the implied covenant of good faith and fair dealing, his claim is dismissed with leave to amend.

### E.  Plaintiff's Tortious Discharge Claim (Count 5)

#### 1.  Applicable Law

"An employer commits a tortious discharge by terminating an employee for reasons which violate public policy." D'Angelo v. Gardner, 819 P.2d 206, 212 (Nev. 1991). This cause of action is also known in Nevada as a "public policy tort." Id. Tortious discharge includes the dismissal of an employee "in retaliation for the employee's doing of acts which are consistent with or supportive of sound public policy and the common good." Id. at 216. However, this tort is limited to "those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." Sands Regent v. Valgardson, 777 P.2d 898, 900 (Nev. 1989).

The Nevada Supreme Court has recognized a claim for tortious discharge when an employer terminates an employee "for seeking industrial insurance benefits, for performing jury duty or for refusing to violate the law." D'Angelo, 819 P.2d at 212. In addition, tortious discharge arises where an employer terminates an employee "for refusing to work under conditions unreasonably dangerous to the employee." Id. at 216. Finally, even if a plaintiff alleges the violation of a strong public policy, courts may not recognize a public policy tort claim if adequate statutory remedies already exist for the alleged termination. Id. at 216-18.

#### 2.  Application

The Court finds that Plaintiff has adequately alleged a claim for tortious discharge. Plaintiff alleges that he was threatened with termination or withholding of pay if he did not write up employees who took leave under the FMLA, that he refused to do so, and that he was verbally harassed, demoted, and constructively discharged for refusing to do so. Plaintiff also alleges that he sought explanations for Defendants' reversal of commissions and failure to pay wages due, that he was met with resistance and not given any specific explanations, and that he was

subsequently terminated or constructively discharged. These allegations are sufficient to state a claim for tortious discharge in Nevada.

A claim for tortious discharge is "available to an employee who was terminated for refusing to engage in conduct that [she], in good faith, believed to be illegal. Any other conclusion . . . would encourage unlawful conduct by employers and force employees to either consent and participate in violation of the law or risk termination." Allum v. Valley Bank of Nev., 970 P.2d 1062, 1068 (Nev. 1998) (internal quotation marks omitted) (alteration in original). Plaintiff's allegations show that he was discharged or constructively discharged for refusing to engage in conduct that he believed in good faith to be illegal, and for engaging in acts consistent with sound public policy and the common good.

Defendants argue that adequate remedies already exist for Plaintiff's public policy tort claims. Defendants cite to the Nevada Supreme Court's decision in D'Angelo, in which the Court cited to a previous case, Sands Regent v. Valgardson, in which it refused to recognize a tortious discharge claim based on age discrimination because the plaintiffs had already recovered tort damages under the ADEA. Here, there has been no showing that Plaintiff has already recovered any tort damages for Defendants' alleged actions. Plaintiff's tortious discharge claims also address a separate wrong—Eldorado's alleged adverse employment action based upon refusal to engage in unlawful conduct. Moreover, Defendants' position is inconsistent with the Nevada Supreme Court's holding in Allum that "[a] claim for tortious discharge should be available to an employee who was terminated for refusing to engage in conduct that he, in good faith, reasonably believed to be illegal." 970 P.2d at 1068. Therefore, under the Nevada Supreme Court's decisions in Allum and D'Angelo, these Plaintiffs have stated public policy tort claims.

Defendants' Motion is therefore denied as to Plaintiff's tortious discharge claim.


### F.  The Nevada Industrial Insurance Act (NIIA)

Defendants argue that Plaintiff's tort claims for tortious discharge and breach of the implied covenant of good faith and fair dealing are barred by the Nevada Industrial Insurance Act (NIIA). The Court disagrees and finds that the NIIA does not preclude these claims.

The NIIA provides the exclusive remedies for employees "on account of an injury by accident sustained arising out of and in the course of the employment." N.R.S. 616A.020(1); Wood v. Safeway, Inc., 121 P.3d 1026, 1031 (Nev. 2005). Under the NIIA, "accident" is defined as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." N.R.S. 616A.030. "Injury" or "personal injury" is defined as "a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result which is established by medical evidence[.]" N.R.S. 616A.265.

Plaintiff's claims for tortious discharge and breach of the implied covenant of good faith and fair dealing relate to Eldorado's alleged reversal of commission fees earned by Plaintiffs, failure to pay overtime wages and wages for each hour worked, failure to provide breaks for meals or rest, and termination of Plaintiffs. These allegations clearly do not constitute "injuries" or "accidents" within the meaning of the NIIA, as they are not violent or traumatic events producing objective symptoms of injuries. Therefore, the NIIA does not bar these claims. The Court denies Defendants' Motion as it relates to this claim.

### G.  FLSA Overtime Claim (Count 6)

Next, Defendants argue that Plaintiff's allegations relating to his claim for unpaid overtime are not sufficient to state a claim.

"[I]n order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments [under the FLSA] must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." Landers v. Quality Comm'ns, Inc., 771 F.3d 638, 644-45 (9th Cir. 2014). "A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." Id. at 645. While a plaintiff need not allege the amount of overtime compensation he is owed "with mathematical precision," he must nonetheless allege sufficient facts to allow the court to infer

1    that "there was at least one workweek in which [he] worked in excess of forty hours and [was]

2    not paid overtime wages." Id. at 646.

3          The Court finds that Plaintiff's FLSA overtime claim fails to meet the pleading standard

4    set forth in Landers. The only allegations in the Amended Complaint relating to Plaintiff's

5    overtime wages claim are that "Eldorado failed to pay Plaintiff overtime due to him despite the

6    fact that he consistently worked over 40 hours per week," that "Plaintiff believes that Eldorado

7    infrequently paid his overtime based upon hours worked in weekly periods which is not

8    consistent with the law," and that Eldorado "failed and refused to pay overtime" and "fail[ed] to

9    compensate Plaintiff at a rate not less than one and one-half times the regular rate of pay for

10   work performed in excess of forty hours in a workweek." This is precisely the type of pleading

11   foreclosed by Landers. In that case, the Ninth Circuit dismissed an allegation that a plaintiff

12   "worked more than 40 hours per week for the defendants, and the defendants willfully failed to

13   make said overtime and/or minimum wage payments." 771 F.3d at 646. Plaintiff's allegations do

14   not meet the pleading standard for FLSA overtime claims set out in Landers. Therefore, this

15   claim is dismissed with leave to amend.

16

17          **H.  Private Right of Action to Enforce Nevada Labor Statutes**

18          First, Defendants argue that Counts 6 through 11 must be dismissed because there is no

19   private right of action to enforce the labor statutes raised in those counts: N.R.S. 608.018

20   (overtime), N.R.S. 608.016 (failure to pay each hour worked), N.R.S. 608.019 (meal and rest

21   periods), N.R.S. 608.100 (unlawful taking of wages), N.R.S. 608.190 (willful failure to pay

22   wages), or N.R.S. 608.040 (waiting time penalties). Defendants rely on the decision of the

23   Supreme Court of Nevada in Baldonado v. Wynn Las Vegas, LLC, 194 P.3d 96 (Nev. 2008),[2] as

24   _____

25          [2] In Baldonado, the Nevada Supreme Court found there is no private right of action to
     enforce N.R.S.  608.160, N.R.S. 608.100, or N.R.S. 613.120. 194 P.3d at 958-64. However, in a
26   footnote, the Court acknowledged that N.R.S. 608.140 "expressly recognize[s] a civil
     enforcement action" by employees to recover unpaid wages. Id. at 964 n.33.  Subsequent to
27   Baldonado, the Nevada Supreme Court again referenced a privae right of action in an
     unpublished opinion in Csomos v. Venetian Casino Resort, LLC, in which the court reasoned
28   that the legislature likely intended a private right of action under NRS 608.140 because the
     statute references attorney fees. No. 55203, 2011 WL 4378744, at *2, 2011 Nev. Unpub. LEXIS
     1629 at *6 (Nev. Sept. 19, 2011) ("It is doubtful that the Legislature intended a private cause of

1    well as several decisions from courts in this district, to support their argument. In response,

2    Plaintiff states that he does not oppose the dismissal of their claims under these statutes, but

3    reserves the right to file a motion to amend his complaint if proof comes to light that a private

4    right of action may be available under these statutes.

5            For the purposes of considering possible amendment, this Court notes that it *does* find

6    that there is a basis under Nevada law for an employee to bring a private right of action under

7    N.R.S. 608.140 to recover "wages earned and due according to the terms of his or her

8    employment." N.R.S. 608.140; see <u>Baldonado v. Wynn Las Vegas, LLC</u>, 194 P.3d 96, 104 n.33

9    (Nev. 2008) (describing N.R.S. 608.140 as providing for "civil actions *by employees* to recoup

10   unpaid wages," and stating that "the existence of express civil remedies within the statutory

11   framework of a given set of laws indicates that the Legislature will expressly provide for private

12   civil remedies when it intends that such remedies exist") (emphasis added).[3] The Court also finds

13   that the statutes invoked in Counts 6 through 11 may provide a basis for recovery of unpaid

14   wages in an action brought under N.R.S. 608.140. Therefore, because amendment would not be

15   futile, Plaintiff shall be permitted to amend his complaint as to these causes of action.

16

17           **I.   Claims against Individual Defendants**

18           Defendants also argue that the Individual Defendants (Michael Marrs, Bruce Polansky,

19   Kristen Beck, Dominic Taleghani, and James Grimes) should be dismissed from these cases,

20   both because they cannot be held liable for violations of Title VII and because Plaintiff has failed

21   to allege sufficient facts against them. Plaintiff does not name any of the Individual Defendants

22   in any of his causes of action. Therefore, the Individual Defendants are dismissed without

23   prejudice from his case.

---

24   action to obtain attorney fees for an unpaid wages suit but no private cause of action to bring the
     suit itself.")

25

26           [3] <u>Supra</u>, n.2 The Court also notes that the plain language of the statute supports the
     existence of a private right of action.  The statute identifies categories of individuals—not
     officials—as those who may "have cause to bring suit for wages earned."  N.R.S. 608.140

27   (identifying mechanics, artisans, miners, laborers, servants, and employees as "hav[ing] cause to
     bring suit for wages earned and due"). Moreover, the provision within the statute for the payment

28   of "attorney fee[s]" further supports an implied private right of action. There would be no need
     for such allowance within the language of the statute if a private right of action were not implied.

## V.     CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (ECF No. 20) is granted in part and denied in part, as follows:

- Count 3 (Retaliation) is dismissed to the extent it asserts a claim under Title VII, but may proceed under the FMLA.
- Count 4 (Breach of the Implied Covenant of Good Faith and Fair Dealing) is dismissed only with respect to the potential for tort liability.
- Count 6 (FLSA Overtime) is dismissed with leave to amend.
- Counts 6 through 11 (Violations of the Nevada Labor Statutes) are dismissed with leave to amend.
- All the Individual Defendants are dismissed from the case without prejudice.
- All other claims may proceed.

DATED October 5, 2016:

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**